No. 2024-1300

# United States Court of Appeals
# for the Federal Circuit

CROCS, INC.,

*Appellant*

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

*Appellee*

Appeal From the United States International Trade Commission in
Investigation No. 337-TA-1270

## OPPOSITION TO APPELLEE'S MOTION TO DISMISS
## FOR LACK OF JURISDICTION

Mark Samartino
ARNOLD & PORTER KAYE SCHOLER
LLP
70 West Madison St., Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2300
Mark.Samartino@arnoldporter.com

Andrew T. Tutt
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
Andrew.Tutt@arnoldporter.com

Michael A. Berta
Sean M. Callagy
Isaac L. Ramsey
ARNOLD & PORTER KAYE SCHOLER
LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Michael.Berta@arnoldporter.com

*Counsel for Appellant Crocs, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Appellant certifies the following:

1.     The full names of every party or amicus represented by me are:

     Crocs, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

     N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties or amicus curiae represented by me are:

     None

4.     The names of all law firms and the partners or associates that appeared for the parties or amicus now represented by me in the trial court or agency and have not or will not appear in this court are:

- Thomas T. Carmack (Arnold & Porter Kaye Scholer LLP)
- Jacob Michael Bass (Arnold & Porter Kaye Scholer LLP)
- Jessica Gillotte (Arnold & Porter Kaye Scholer LLP)
- Matthew Medina (Arnold & Porter Kaye Scholer LLP)
- Samuel Sokolsky (Arnold Porter Kaye Scholer LLP)
- Ernesto Hernandez (Arnold Porter Kaye Scholer LLP)

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly

affect or be directly affected by this court's decision in the pending
appeal are:

Crocs, Inc. v. Cape Robbin, Inc., et al.
Case No. 1:21-cv-01890-RM-NRN (D. Colo.)


DATED: March 18, 2024          _/s/ Michael A. Berta_
                                Michael A. Berta

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................ 5

III. ARGUMENT .................................................................... 8

    A. Crocs Filed Its Appeal Less Than 60 Days After the Commission's Determination Became Final ......................... 8

    B. The Commission's Position that Interrelated Findings Within a Single Determination Have Different Appeal Deadlines Is Untenable ....................................... 18

IV. CONCLUSION ............................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied Corp. v. ITC*,
782 F.2d 982 (Fed. Cir. 1986) .................. 3, 4, 18, 19, 20, 21, 22, 23, 25

*Ateliers de la Haute-Garonne v. Broetje Automation USA Inc.*,
717 F.3d 1351 (Fed. Cir. 2013) ........................................................... 19

*Broadcom Corp. v. ITC*,
542 F.3d 894 (Fed. Cir. 2008) ...................................... 18, 19, 20, 21, 23

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014) ............................................................. 10

*Direct Mktg. Ass'n v. Brohl*,
575 U.S. 1 (2015) ................................................................................ 15

*Duracell, Inc. v. ITC*,
778 F.2d 1578 (Fed. Cir. 1985) ........................................................... 25

*Forney v. Apfel*,
524 U.S. 266 (1998) ...................................................................... 22, 25

*Fromson v. Advance Offset Plate, Inc.*,
No. 83-850, 1983 WL 64850 (Fed. Cir. June 13, 1983) ......................... 4

*Fuji Photo Film Co. v. ITC*,
386 F.3d 1095 (Fed. Cir. 2004) ........................................................... 22

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ............................................................................. 15

*Imp. Motors, Ltd., Inc. v. ITC*,
530 F.2d 940 (C.C.P.A. 1976) ........................................................ 10, 11

*John Mezzalingua Assocs., Inc. v. ITC*,
660 F.3d 1322 (Fed. Cir. 2011) ........................................................... 25

*LG Elecs. Mobilecomm U.S.A., Inc. v. ITC,*
  243 F. App'x 598 (Fed. Cir. 2007)........................ 12, 13, 14, 22, 24, 26

*SSIH Equip. S.A. v. ITC,*
  718 F.2d 365 (Fed. Cir. 1983) ............................................. 13

*Tessera, Inc. v. ITC,*
  646 F.3d 1357 (Fed. Cir. 2011) ......................... 14, 20, 23, 24

*United States v. Hollywood Motor Car Co.,*
  458 U.S. 263 (1982) ................................................................ 15

*Young Engineers, Inc. v. ITC,*
  721 F.2d 1305 (Fed. Cir. 1983) .................................. 3, 11, 12, 19, 25

STATUTES

19 U.S.C.
  § 1337............................................................................ 1, 4, 5
  § 1337(c)................................................................. 8, 13, 14, 24
  § 1337(j)(1)(B)............................................................... 7, 9
  § 1337(j)(2)...................................................................... 7, 9
  § 1337(j)(4)........................................... 2, 4, 7, 9, 20, 23

28 U.S.C.
  § 1295(a)(6)............................................................... 8, 24

REGULATIONS

19 C.F.R.
  § 210.49............................................................................ 13

86 Fed. Reg. 36,303 (July 9, 2021) ............................................. 5

OTHER AUTHORITIES

15A C. Wright, A. Miller, & H. Cooper, Federal Practice and
  Procedure § 3902 (3d ed.)............................................. 4, 22

Report on Trade Reform Act of 1974, S. Rep. No. 93-1298,
  93d Cong., 2d Sess. at 196-97 (1974).................................. 11

# I.    INTRODUCTION

The International Trade Commission's ("ITC" or "Commission") motion seeks to avoid judicial review of a deeply flawed final determination that misapplies the law and denies effective relief, despite overwhelming evidence of infringement of Crocs's intellectual property rights.  The motion should be denied.

Appellant Crocs, Inc. ("Crocs") seeks review of an ITC determination that granted Crocs incomplete relief, while also denying Crocs essential relief, on the basis of flawed and inconsistent findings, including as to the appropriate remedies subject to Presidential review, with respect to a violation of 19 U.S.C. § 1337.  The Commission issued its one and only final determination in the Investigation below on September 14, 2023.  That final determination granted a limited exclusion order ("LEO") and cease-and-desist orders ("CDOs") against certain respondents but failed to grant a general exclusion order ("GEO") because the ITC incorrectly characterized its determination as not finding a violation.  This faulty characterization, one issue Crocs appeals, triggered a 60-day Presidential review period, rendering the determination non-final until the Presidential review period ended.  *See*

19 U.S.C. § 1337(j)(4). That period ended on November 13, 2023. The next day, the determination became final. Crocs timely petitioned for review on December 22, 2023.

The ITC now moves to dismiss based on the incorrect claim that the ITC's sole determination is actually several, separate determinations all within the same document issued at the same time about the same intellectual property. By *post hoc* characterizing this as multiple determinations, the ITC claims that part of the determination became final more than 60 days before Crocs petitioned for review. That is manifestly incorrect. It conflicts with plain statutory text, the Commission's regulation, this Court's precedential cases, the presumption against piecemeal appeals, and the principle that jurisdictional rules should be clear.

In an investigation in which the ITC issues one final determination that denies relief in part and grants relief in part, and thereby triggers Presidential review, the statute provides that the deadline to appeal that (single) determination is 60-days from "the day after the close of such period or the day on which the President notifies the Commission of his approval, as the case may be." 19 U.S.C. § 1337(j)(4). This Court more

than four decades ago, in *Young Engineers, Inc. v. ITC*, held that such a final order, not merely portions thereof, constitutes a singular Commission "determination." 721 F.2d 1305, 1311 (Fed. Cir. 1983).

Against this clear statutory authority and decades of precedent, the cases the ITC's relied-upon cases are inapposite. The ITC fails to cite a single precedential case supporting the proposition that a single order about only one set of intellectual property can embody multiple Commission "determinations" requiring multiple notices of appeal under § 1337(j), particularly when the appeal, among other things, relates to inconsistencies and errors regarding remedies that only became final after the Presidential review period. Instead, the Court has held, in a limited instance exemplified by *Allied Corp. v. ITC*, that when the ITC (clearly and without ambiguity) ***elects*** to issue multiple separate final determinations in separate documents addressing separate intellectual property rights in the course of the same investigation, each freestanding determination is properly appealed separately. 782 F.2d 982, 984 (Fed. Cir. 1986). Given its unusual posture, *Allied Corp.* has been seldom applied, and has no bearing on cases like this one, where the ITC elected to issue one final determination. *Allied Corp.* also has nothing to say

about situations like the present where the scope and character of the relief afforded are under appeal, and thus were expressly nonfinal under § 1337(j)(4).

The illogic of the ITC's position is made plain by the fact that even under its own argument, *some* of the issues Crocs now raises are timely. Namely, Crocs appeals the ITC's decision to grant it inadequate relief based on an inconsistent set of findings that the defaulting respondents simultaneously did and did not violate § 1337.[1]  And "a party may appeal a judgment that gives some, but not all, of the requested relief."  15A C. Wright, A. Miller, & H. Cooper, *Federal Practice and Procedure* § 3902 (3d ed.) ("Wright & Miller").  As the ITC would have it, Crocs's appeal is timely as to those issues, but not others involving the same parties and their infringement of the same intellectual property.  This makes no

---

[1] The ITC argues that Crocs's docketing statement limits the scope of this appeal to a subset of the issues.  *See* Mtn. 5 (citing ECF 8 at 1).  A docketing statement does not limit the issues that may be pressed on appeal.  *See, e.g.*, *Fromson v. Advance Offset Plate, Inc.*, 1983 WL 64850, at *1 (Fed. Cir. June 13, 1983).  The petition for review clearly states that Crocs intends to appeal *all* adverse determinations.  *See* ECF 1-2 at 2. Crocs hereby reaffirms that it is appealing, *inter alia*, the scope of the relief granted (that was subject to Presidential review) in view of the Commission's contradictory finding of a violation and not-a-violation regarding the defaulting respondents.

sense.  Congress plainly would not, and did not, require a party to appeal a single determination twice, on mutually exclusive timelines, to obtain judicial review of all aspects of that determination.  Nor did Congress grant the ITC the power to play games with appellate review by allowing it to unilaterally decide, after the fact, that a single determination was multiple determinations, when it so wished, to avoid review.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This appeal seeks review of a final determination that ended an investigation the Commission instituted on July 9, 2021, based on a complaint Crocs filed alleging a violation of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337.  *See* 86 Fed. Reg. 36,303-36,304 (July 9, 2021).  Crocs asserted trademark infringement, false designation of origin, dilution by blurring and tarnishment, and unfair competition with respect to certain footwear that copy 3D trademarks (the "3D Marks") that create the iconic appearance of Crocs's Classic Clog.  *See id.*

Four respondents failed to appear or respond.  On May 20, 2022, the Administrative Law Judge ("ALJ") found those respondents in default ("defaulting respondents").  *See* ECF 1-2, Ex. A at 3 (Comm'n

Notice).  On June 10, 2022, the Commission declined to review, and therefore affirmed, the determination of default.  *See id.*

Three respondents remained at the conclusion of proceedings: Hobby Lobby Stores, Inc.; Orly Shoe Corp.; and Quanzhou ZhengDe Network Corp. d/b/a Amoji (collectively, "participating respondents").  All other respondents were terminated earlier in the investigation on the basis of settlement agreements or consent orders, most of which admitted infringement of Crocs's 3D Marks.  As to the participating respondents, the ALJ conducted an evidentiary hearing and issued an initial determination on January 9, 2023, finding no violation.  *See id.*

On September 14, 2023, the ITC (with one Commissioner dissenting) issued its one and only final determination.  *See* ECF 1-2, Ex. A at 4 (Comm'n Notice), Ex. C at 1 (Final Determination).  The ITC made inconsistent findings with respect to the defaulting respondents, finding a violation for some purposes but not others.  The Commission also found no violation by the three participating respondents.  The ITC failed to address the acts of settling respondents.  Over Crocs's objection that the Commission should issue a GEO, the ITC instead issued LEOs against the four defaulting respondents and CDO's against two defaulting

respondents (collectively, "the remedial orders"). ECF 1-2, Ex. A at 4 (Comm'n Notice), Ex. C at 1 (Final Determination). The ITC based its denial of a GEO on the fact that, because there were active respondents, the facts necessary to establish a violation by defaulting respondents could not be presumed under § 1337(g) and must be established under § 1337(d)(2). But then, without any analysis or even recognition of the (unchallenged and unrebutted) portions of the trial record where Crocs *did* establish and brief defaulting respondents' violations, the ITC summarily stated that Crocs had not established such a violation. These inconsistent findings and the incomplete relief afforded are within the scope of this appeal.

Because it found a violation, the ITC was required to transmit the final determination to the President. *See* 19 U.S.C. § 1337(j)(1)(B). The President then had 60 days to disapprove the final determination for policy reasons. *See id.* § 1337(j)(2). The determination was not disapproved, and therefore became final on November 14, 2023, the day after the Presidential review period ended. *See id.* § 1337(j)(4).

Crocs noticed this appeal 38 days later, on December 22, 2023.

## III. ARGUMENT

### A. Crocs Filed Its Appeal Less Than 60 Days After the Commission's Determination Became Final

This appeal is timely. Crocs filed its appeal less than 60 days after the one and only appealable determination in the investigation below became final. That is the only conclusion in accord with statutory text, this Court's precedential cases, the ITC's regulations, the presumption against piecemeal appellate review, and the principle that jurisdictional rules should be clear. Congress did not write a statute that requires a party in Crocs's position to file *two* (or more) appeals from the same determination regarding the same parties and their infringement of the same rights to obtain complete judicial review.

1. This Court has jurisdiction "to review the final determinations of the [Commission] relating to unfair practices in import trade, made under [§ 1337]." 28 U.S.C. § 1295(a)(6). "Any person adversely affected by a *final determination* of the Commission under subsection (d), (e), (f), or (g) may appeal such determination, within 60 days after the determination becomes final," to this Court. 19 U.S.C. § 1337(c) (emphasis added).

In cases where "the Commission determines that there is a violation of [§ 1337], or that, for purposes of subsection (e), there is reason to believe that there is such a violation," "such determination shall, *except for purposes of subsection (c)*, be effective upon publication thereof in the Federal Register." *Id.* § 1337(j)(1), (3) (emphasis added).

The President has 60 days in which he may "for policy reasons, disapprove[] such determination." *Id.* § 1337(j)(2). If the President does not disapprove, then, "*for purposes of paragraph (3) and subsection (c)* such determination *shall become final* on the day after the close of such period or the day on which the President notifies the Commission of his approval, as the case may be." *Id.* § 1337(j)(4) (emphases added).

The statute contemplates that whole orders, not individual findings, constitute a "determination." The section governing Presidential review provides that if the ITC determines that there is a violation, it must "transmit to the President a copy of such determination." *Id.* § 1337(j)(1)(B). The statute thus envisions that a final Commission determination is a unitary whole—as here, the single determination containing all of the Commission's subsidiary findings—a

copy of which can be transmitted to the President in the event, as here, that the final determination includes a finding of a violation.

2. This Court has consistently construed the plain text as explicated above. Fifty years ago, this Court's predecessor, the United States Court of Customs and Patent Appeals (CCPA),[2] explained in the first appeal to the CCPA following the 1974 amendments of the Trade Act that "the legislative history as evidenced by the Senate Committee on Finance report … indicates that a final decision of the Commission on the merits in favor of a complainant under subsection (d), (e), or (f) is not an appealable 'final determination' until the Commission's decision has been referred to the President under § 337(g), as amended, and approved or not disapproved within the statutory 60-day period." *Imp. Motors, Ltd., Inc. v. ITC*, 530 F.2d 940, 945 (C.C.P.A. 1976). The report stated that "[b]y final determination, as used in this section, the Committee means a Commission determination which has been referred to the President under amended section (g) of section 337, and has been approved by the President or has not been disapproved for policy reasons

---

[2] CCPA precedents are binding on this Court. *Deckers Corp. v. United States*, 752 F.3d 949, 964 (Fed. Cir. 2014).

by the President within the 60 day period after referral of the determination." *Imp. Motors*, 530 F.2d at 945 (quoting Report on Trade Reform Act of 1974, S. Rep. No. 93-1298, 93d Cong., 2d Sess. at 196-97 (1974)).

Less than a decade later, this Court held that ITC findings embodied in a single order constitute a single determination. In *Young Engineers, Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983), the Commission issued a determination that resulted in a GEO that prohibited importation of an infringing product, a cease-and-desist order against the importer, and cease-and-desist orders against three domestic customers of the importer. *Id.* at 1308-09. The President disapproved of the three cease-and-desist orders directed to domestic users as inappropriate. *Id.* at 1309. The Commission then "modif[ied]" its order to only consist of a GEO and a cease-and-desist order against the importer. *Id.* "The matter was again submitted to the President, no disapproval resulted … and the determination thus became final for purposes of appeal." *Id.* This Court made clear that the entire order, not merely the remedial portions thereof, constituted one "determination":

> [T]he President had no alternative but to veto *the determination* although he disapproved *only part* of the remedy. Had each

> violation been set forth separately with its appendant remedy, *and sent to the President as separate determinations*, the President would have been in a position to disapprove only the determination connected with the cease and desist orders which he found unacceptable.

*Id.* at 1311 (emphases added). As the Court explained later in the opinion, "an ITC determination (including remedy) … is not *final* until presidential approval is given or the 60-day period for review expires without disapproval." *Id.* This makes sense, as *Young Engineers* shows: if the President disapproves of the remedy, the ITC may modify the final determination, which may then be appealed. It makes no sense to require interim appeals prior to finality when a final determination could be subsequently modified. This statutory scheme has been in place for 50 years and Crocs's position is supported by precedent from the very first cases construing that statute.

This Court long understood the statute to work as written. As the Court explained in *LG Electronics Mobilecomm U.S.A., Inc. v. ITC*, "as a general rule, a party aggrieved by an ITC determination may not appeal until either the President approves of the determination or the 60-day review period ends." 243 F. App'x 598, 600 (Fed. Cir. 2007). "Section 1337 provides that an ITC determination does not become final for

purposes of judicial review until the President has either approved of the determination or failed to disapprove within 60 days." *Id.* at 602; *see also SSIH Equip. S.A. v. ITC,* 718 F.2d 365, 370 (Fed. Cir. 1983) (similar). "In other words, the statutory scheme provides for initial review of ITC determinations, as well as exclusion and cease-and-desist orders, by the President and subsequent review by this court unless the President first disapproves of the determination." *LG*, 243 F. App'x at 602. *"[I]t is clear that Congress did not intend that an ITC determination would be before the President and this court simultaneously."* *Id.* (emphasis added).

3.  The ITC itself also understands a "determination" to encompass an entire final order, and thus one appealable determination.  The Commission's motion here repeatedly calls the order Crocs now appeals from the Commission's "final determination."  *See, e.g.*, Mtn. 1 ("The Commission's final determination in this case issued on September 14, 2023[.]").  The Commission's own regulations equate one "determination" with one singular "action." 19 C.F.R. § 210.49.  The ITC's motion fails to cite or account for its regulation.  It has argued in the past "that allowing an appeal before the end of the Presidential review period would contravene the purpose of the delay in judicial review provided by 19

U.S.C. § 1337(c)," and "that the 60-day Presidential review period 'reflects a Congressional judgment that the President's exercise of his discretion should not be hampered by ongoing judicial proceedings concerning the matter he is reviewing.'" *LG*, 243 F. App'x at 601 (quoting the ITC). The statute has not changed in the seventeen years since the ITC persuaded this Court of the correctness of its position.

4. Finally, the reading of the statute advanced by the ITC today contravenes the bedrock presumption against piecemeal appellate review and the longstanding principle that jurisdictional rules should be clear and unambiguous. Under the Commission's logic, the single determination transmitted to the President was really multiple determinations against one or more respondents, and this appeal is really multiple appeals, some of which should have been noticed on one deadline and others of which should have been noticed on another, mutually exclusive deadline. That cannot be correct, or just.

Treating a final determination as one "determination" for purposes of appeal prevents piecemeal and potentially unnecessary appeals. *See, e.g.*, *Tessera, Inc. v. ITC*, 646 F.3d 1357, 1368 (Fed. Cir. 2011) (holding in the specific context of ITC appeals that piecemeal appeals are

disfavored); *see also United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982) ("general principle" that piecemeal appeals are disfavored). It would be grossly inefficient to require seriatim appeals of a single decision, by a single party, to each address parts of an unfair trade practice inquiry or subsets of similarly situated respondents.

The Commission's position also contravenes "the rule that jurisdictional rules should be clear." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) (cleaned up). The Supreme Court has held that "administrative simplicity is a major virtue in a jurisdictional statute." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). "Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but [whether the test is satisfied]." *Id.* "Complex tests … encourage gamesmanship, and … diminish the likelihood that results and settlements will reflect a claim's legal and factual merits." *Id.* They consume "[j]udicial resources" and weaken "certainty and predictability." *Id.* The fact-intensive unpredictable slice-and-dice procedure for noticing appeals the ITC advocates would impose unacceptable burdens on the ITC, complainants, respondents, and this Court.

This case illustrates why. The Commission's failure to provide complete relief—a GEO—is inextricably tied to both the infringement and non-infringement findings the ITC made against defaulting respondents, and the inadequate remedy—LEOs and CDOs—ordered against them. There is no dispute that these remedial provisions only became final after the Presidential review period expired. The fact that the Commission issued these remedies is relevant to whether a GEO should also have been issued. Had the President disapproved of the remedies and the Commission engaged in further proceedings, this would have directly affected the merits of a GEO. Setting aside all of the other issues with the Commission's *post hoc* gotcha attempt, the findings of some violations, and the grant of some, but not other, remedies therefor, are so interconnected that mandating separate appeals and deadlines makes no sense.

As will also be further explained in merits briefing, the ITC erred in failing to analyze *any* substantive evidence of defaulting or settling respondents's violations for purposes of issuing a GEO, as well as *any* evidence supporting the issuance of a GEO, including the multitude of companies selling infringing goods in the United States. This was shown

through, among other things, multiple respondents *admitting infringement* in the Investigation. Thus, the "slicing and dicing" of facts regarding infringement and remedies within the final determination for appeal purposes is impractical at best. It would lead to multiple appeals with potentially inconsistent results, and risks eliminating Crocs's ability to properly put the totality of the Commission's errors before this Court in a single appeal.

Moreover, contrary to the Commission's assertion, piecemeal appeals by one party are *not* "the current practice." Mtn. 11. None of the appeals cited (Mtn. 11) involve one party that filed multiple appeals on mutually exclusive deadlines to challenge a final determination. The ITC has not identified any case where a litigant filed two notices of appeal from a single determination singularly sent to the President using the procedure that Commission now asserts is (silently) *required* by the statute. That is telling. The statute does not require parties who wish to appeal a determination subject to Presidential review to file two (or many) notices of appeal to do so.

While at times recognizing that, here, it issued just one final "determination" (see p.14, *supra*), the ITC elsewhere attempts to parse

the determination into an "affirmative determination" running against some respondents, and a "negative determination" running against others.  Mtn. 1-2.  As discussed above, this distinction breaks down insofar as the Commission issued mutually inconsistent positive *and* negative determinations against the same parties.  And, not only does the proposed relief relate to defaulting respondents, it also directly implicates the issues Crocs is appealing related to participating respondents.  This attempted recasting of its own order lays bare the error in the ITC's position.  If the ITC is right, remedial portions of the same final order are now subject to two different appeals simultaneously on mutually exclusive jurisdictional deadlines.  Congress obviously did not create such a statutory morass fifty years ago when it expressly provided for the appeal of a final determination only after the expiration of any applicable Presidential review period.

## B. The Commission's Position that Interrelated Findings Within a Single Determination Have Different Appeal Deadlines Is Untenable

The ITC (Mtn. 8-10) points to *Allied Corp. v. ITC*, 782 F.2d 982 (Fed. Cir. 1986), *Broadcom Corp. v. ITC*, 542 F.3d 894 (Fed. Cir. 2008), and *Excel Dryer v. ITC*, No. 18-1622, Order, ECF 14 (Fed. Cir. May 22, 2018)

as the basis for its motion. But the decision in *Young Engineers* is squarely on point, and that precedent controls over any later-decided cases. *See Young Eng'rs*, 721 F.2d at 1311; *see also Ateliers de la Haute-Garonne v. Broetje Automation USA Inc.*, 717 F.3d 1351, 1358 n.3 (Fed. Cir. 2013) ("[T]he rule is that the earlier panel decision controls[.]"). Regardless, *Allied* and *Broadcom* are inapposite, and *Excel Dryer* is inapposite and unpersuasive.

1. *Allied* is inapposite because it involved two distinct Commission determinations: a July 6, 1984 determination that two asserted patents were invalid (and one other patent was valid and infringed), and a later October 15, 1984 determination excluding the articles that infringed the valid patent. *Allied Corp.*, 782 F.2d at 983. This Court held that the July 6, 1984 invalidity determination was appealable when issued, and therefore, taken from the October 15, 1984 order was untimely. *Id.* at 984. The Court held that good policy supported permitting immediate review of the invalidity determinations, explaining there is "no reason" a petitioner should "continu[e] to suffer importation of those goods [it believes infringe its patents] for seven months, while awaiting" the final conclusion of the ITC proceedings. *Id.* *Allied* stands for the proposition

that the ITC *can* issue separate final determinations if desired; it says nothing about how appeals *must* be taken from a single determination subject to Presidential review.

*Broadcom* is inapposite for the same reason. *See Tessera,* 646 F.3d at 1368 (*Broadcom* is "factually analogous" to *Allied* and inapposite). *Broadcom* also involved two determinations: a December 8, 2006 determination of noninfringement of certain patents, and a later June 7, 2007 determination excluding certain devices. *See* Qualcomm Brief at 1, *Broadcom Corp.*, 542 F.3d 894 (No. 07-1164), 2008 WL 576665. Rather than await the conclusion of proceedings, the appellant appealed the December 8, 2006 determination shortly after issuance. The Court held that was correct under *Allied*. *Broadcom Corp.*, 542 F.3d at 896-97. Just like *Allied*, *Broadcom* stands only for the proposition that interim final determinations are appealable when issued. It says nothing about a situation where the Commission issues a single determination subject to Presidential review, because Congress has already spoken to that scenario in § 1337(j)(4).

Moreover, *Allied* and *Broadcom* are distinguishable on two further grounds. First, neither case involved the appeal of a remedial order

subject to the Presidential review period. Thus, neither addressed the scenario here. Second, both cases involved multiple patents, and the appellants were appealing issues solely related to invalidity or noninfringement findings. *Allied Corp.*, 782 F.2d at 983; *Broadcom Corp.*, 542 F.3d at 896-97. Here, Crocs asserted two 3D Marks that are essentially a conjoint piece of intellectual property, as one of the marks contains all of the elements of the other. The Commission undertook a single analysis for the 3D Marks, and thus the findings with respect to infringement and remedy in the final determination were all part of a single determination that became final after the expiration of the Presidential review period.

2. The other case on which the ITC relies, while closer, is inapposite and unpersuasive. In *Excel Dryer*, the Commission, this time as part of a single order, declined to issue a cease-and-desist letter as to one respondent, but granted cease-and-desist letters as to other respondents. *Excel Dryer v. ITC*, No. 18-1622, Order at 1 (Fed. Cir. May 22, 2018), ECF 14 (unpublished). The Court reasoned that even though the appeal was from a single order it fell within *Allied*. *Id.* at 2-3.

*Excel Dryer* is nonetheless different because, unlike in this case, the appellant "[did] not, and could not, appeal from the Commission's other favorable determinations." *Id.* at 3. Consequently, there was no risk the appellant would be required to appeal the same determination twice. In contrast, here Crocs *does* appeal the inadequacy of remedies issued as part of "favorable" determinations. The ITC's imposition of LEOs against defaulting respondents on the basis of a violation, while superficially "favorable," is certainly not the GEO Crocs sought and is wholly inadequate to stop the mass copying of Crocs's 3D Marks. Such inadequacy of relief and incoherent analysis is absolutely something that Crocs can, and does, appeal here. *See* Wright & Miller § 3902, *supra*; *Forney v. Apfel*, 524 U.S. 266, 271 (1998); *see also Fuji Photo Film Co. v. ITC*, 386 F.3d 1095, 1107 (Fed. Cir. 2004) (prevailing party appealed failure to impose cease-and-desist order).

Finally, *Excel Dryer* is non-precedential, unpersuasive and should not be followed. *See, e.g.*, *LG*, 243 F. App'x at 601-02 (declining to follow an unpublished nonprecedential opinion concerning the timing to appeal ITC determinations). The panel in *Excel Dryer* did not consider that the

ITC issued multiple determinations in *Allied*.[3]  The one paragraph applying *Allied* explained that *Allied* holds that ITC final determinations are not subject to the traditional final judgment rule and must be appealed on interlocutory basis.  *See Excel Dryer*, Order at 3.  That does not address the distinct and critical point in this case: Crocs appeals a single determination affording incomplete relief.  A determination subject to Presidential review is not final until the conclusion thereof, and no part of *Excel Dryer* could, or did, quibble with that.  *See* § 1337(j)(4).  Indeed, none of the three cases on which the ITC relies engaged with the statute's text at all.

3.   As the Commission tacitly concedes, by attempting to distinguish the case in a footnote (Mtn. 9 n.6), this case is analogous to *Tessera, Inc. v. ITC*, 646 F.3d 1357, 1368 (Fed. Cir. 2011).  In *Tessera*, this Court held that *Allied* and *Broadcom* do not apply where a party would be "unable to obtain" the relief it seeks (there, an LEO) unless

---

[3] *Excel Dryer* did not cite *Broadcom* and thus could not have taken into account the fact that *Broadcom*, like *Allied*, presented a procedural posture with two final determinations (even though this was not apparent from the text of the ruling in *Broadcom* and thus might be overlooked).  However, the Commission was a party to *Broadcom* and should have recognized and disclosed here that on its facts, *Broadcom* is inapposite for involving multiple freestanding final determinations.

further proceedings concluded in its favor. *Id.* at 1368. Namely, winning an appeal on the exhaustion issue would have been useless unless the appellant *also* won on claim construction and infringement—as a consequence, the appellant properly waited to raise those issues together once all of them were resolved. *See id.* at 1368-69. Here, Crocs needed to wait until the conclusion of the Presidential review period before the less-than-complete remedy was appealable.[4] *See LG*, 243 F. App'x at 602 ( "[An] LEO and cease and desist order are not appealable as final determinations pursuant to 28 U.S.C. § 1295(a)(6) during the Presidential review period").

4. The ITC states several times without support that Crocs cannot appeal the remedy it won before the ITC. *See* Mtn. 2, 4, 6 ("Crocs … cannot appeal"). Not so. "Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) may appeal such determination." 19 U.S.C. § 1337(c). Moreover, "a party is 'aggrieved' and ordinarily can appeal a decision 'granting in part and

---

[4] The Commission states that in *Tessera* the appellant took the appeal "within 60 days of the final determination" (Mtn. 9 n.6) but that distinction is meaningless because in *Tessera* there was no Presidential review period, so waiting more than 60 days would have made the appeal untimely. *See Tessera*, 646 F.3d at 1363, 1367.

denying in part the remedy requested.'" *Forney*, 524 U.S. at 271 (citation omitted). Thus, just as this Court stated in *John Mezzalingua Associates, Inc. v. ITC*, Crocs's interest in obtaining a GEO is not mooted simply because it obtained more limited relief in the form of LEOs and CDOs. 660 F.3d 1322, 1326-27 (Fed. Cir. 2011) (holding that the ITC's finding of a product's infringement of one of complainant's patents did not moot an appeal of determination that the product did not violate another of complainant's patents when complainant was seeking GEO based on infringement of latter patent).

The ITC also suggests that waiting to appeal until after the Presidential review period is pointless because the complainant could not appeal the President's disapproval of the remedy. *See* Mtn. 10 (citing *Allied*, 782 F.2d at 983 (citing *Duracell, Inc. v. ITC*, 778 F.2d 1578 (Fed. Cir. 1985))). While a party cannot appeal the *President's* disapproval, such disapproval does not cause an investigation to simply end. Rather, the Commission can fashion a revised remedy, the inadequacy of which is appealable—but only *after* the Presidential review period has run. That is precisely what happened in *Young Engineers*. 721 F.2d at 1307-

10.  This Court recognized that this was the proper procedure then, and it remains so today.

\* \* \* \*

The Commission's position is at odds with statutory text, decades of precedent, the Commission's regulations, and the basic structure of appellate review.  No other scheme requires parties to file notices of appeal at different times for inextricably intertwined issues—against the same parties and addressed in the same order, no less—on pain of forfeiting substantial rights.  Here, Crocs followed the "general rule" that "a party aggrieved by an ITC determination may not appeal until either the President approves of the determination or the 60-day review period ends." *LG*, 243 F. App'x at 600.  None of the ITC's cases require the Court to adopt the absurd position that one determination is really several, or that a single order must be appealed twice to be decided once.  The ITC should answer this appeal on the merits, not seek to end it in contravention of its duties based on a too-clever reading of inapposite cases.

## IV. CONCLUSION

For the foregoing reasons, Appellant respectfully requests that Appellee's motion to dismiss be denied.

Dated: March 18, 2024

Respectfully submitted,

*/s/ Michael A. Berta*

Mark Samartino
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison St., Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Mark.Samartino@arnoldporter.com

Andrew T. Tutt
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Andrew.Tutt@arnoldporter.com

Michael A. Berta
Sean M. Callagy
Isaac L. Ramsey
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Michael.Berta@arnoldporter.com

*Counsel for Appellant Crocs, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF System, which will send notice of such filing to all registered users.

Dated:  March 18, 2024

*/s/ Michael A. Berta*
Michael A. Berta

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.    This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Century Schoolbook font.

2.    This motion complies type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the items exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b), the motion contains 5,192 words.

*/s/ Michael A. Berta*
Michael A. Berta