No. 24-1300

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

CROCS, INC.,

*Appellant*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee.*

Appeal from the United States International Trade Commission in
Investigation No. 337-TA-1270

## APPELLEE INTERNATIONAL TRADE COMMISSION'S
## REPLY IN SUPPORT OF MOTION TO DISMISS
## THE APPEAL AS UNTIMELY

DOMINIC L. BIANCHI
General Counsel
Telephone (202) 205-3365

WAYNE W. HERRINGTON
Assistant General Counsel
Telephone (202) 205-3090

Dated: March 25, 2024

HOUDA MORAD
Attorney for Appellee
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, D.C. 20436
Telephone (202) 708-4716

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

    I.      Crocs Cannot Avoid this Court's Longstanding Precedent that
           Negative Determinations Become Final Upon Issuance......................3

    II.     Crocs Misconstrues the Statutory Language, the Legislative
           History, and the Effect of Presidential Review. ...................................7

    III.    The Cases Cited by Crocs Do Not Support Its Contention that
           Final Determinations Are Single Determinations that Become
           Final After Presidential Review. ..........................................................11

CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajinomoto Co. v. ITC*, 932 F.3d 1342 (Fed. Cir. 2019) ..............................4

*Allied Corp. v. USITC*, 782 F.2d 982 (Fed. Cir. 1986).....................................*passim*

*Allied Corp. v. USITC*, 850 F.2d 1573 (Fed. Cir. 1988)...........................................10

*Amarin Pharma, Inc. v. ITC*, 923 F.3d 959 (Fed. Cir. 2019) ...................................8

*Bio-Rad Labs., Inc. v. ITC*, 998 F.3d 1320 (Fed. Cir. 2021) ......................................4

*Broadcom Corp. v. ITC*, 542 F.3d 894 (Fed. Cir. 2008) ...............................3, 5, 6, 8

*Excel Dryer, Inc. v. ITC*,
    No. 18-1622, Order (Fed. Cir. May 22, 2018) (unpublished) ....................*passim*

*Fuji Photo Film Co. v. ITC*, 386 F.3d 1095 (Fed. Cir. 2004)..................................11

*Imp. Motors, Ltd. v. ITC*, 530 F.2d 940 (C.C.P.A. 1976)..........................................9

*John Mezzalingua Assocs., Inc. v. ITC*,
    660 F.3d 1322 (Fed. Cir. 2011) ..........................................................11

*LG Elecs. Mobilecomm U.S.A., Inc. v. ITC*,
    243 F. App'x 598 (Fed. Cir. 2007) ......................................................11

*SSIH Equip. S.A. v. ITC*, 718 F.2d 365 (Fed. Cir. 1983) ........................................11

*Tessera, Inc. v. ITC*, 646 F.3d 1357 (Fed. Cir. 2011)................................................6

*Young Eng'rs, Inc. v. USITC*, 721 F.2d 1305 (Fed. Cir. 1983) ................3, 4, 10, 11

# TABLE OF AUTHORITIES (cont'd)

Page(s)

**Statutes**

19 U.S.C. § 1337 ................................................................*passim*

19 U.S.C. § 1337(c) ...........................................................2, 7, 8

19 U.S.C. § 1337(d) ................................................................9

19 U.S.C. § 1337(g) (1974) ....................................................8, 9

19 U.S.C. § 1337(j) ..............................................................8, 9, 10

19 U.S.C. § 1337(j)(1)(B) .........................................................10

19 U.S.C. § 1337(j)(2) .............................................................10

**Regulations**

19 C.F.R. § 210.49(d) ..............................................................10

**Legislative Materials**

S. Rep. No. 93-1298 (1974) ........................................................9

# INTRODUCTION

This Court has long made it clear that the right of appeal from each Commission determination in a section 337 investigation turns on the finality of that determination. Here, Crocs appeals the Commission's negative determination of no violation of section 337 by the participating respondents and the Commission's negative determination not to issue a general exclusion order ("GEO").[1] Those negative determinations are not subject to Presidential review, and thus became final upon issuance on September 14, 2023, per this Court's governing precedent. *See*, *e.g.*, *Allied Corp. v. USITC*, 782 F.2d 982, 984 (Fed. Cir. 1986). Crocs failed to file its notice of appeal within 60 days of that date, instead waiting until December 22, 2023. Thus, Crocs' appeal is untimely.

Crocs misapprehends this Court's clear precedent and misconstrues the pertinent statutory language and its legislative history. Not a single case or other authority supports Crocs' contention that negative determinations, including a partial denial of remedy, can become final after Presidential review. *Cf. Excel Dryer, Inc. v. ITC*, No. 18-1622, ECF 14, Order at 3 (Fed. Cir. May 22, 2018) (unpublished) (ECF 11, Ex. 1) (appeal from a partial denial of remedy was untimely where complainant waited until after the period of Presidential review

---

[1] The denial of the GEO was also *a negative determination* that became final upon issuance. Thus, Crocs' appeal was also untimely as to that determination.

expired).  The Commission does not dispute that partial relief may be appealable by a complainant.  But the favorable part of the relief is not, because it is not adverse to the complainant, and the negative part is not subject to Presidential review.  *See* 19 U.S.C. § 1337(c); *Allied*, 782 F.2d at 983.

While seeking exceptional treatment, Crocs fails to address the simple truth that, like all other complainants before the Commission, it should have filed its appeal no later than 60 days after the Commission's negative determinations, not after expiration of the period of Presidential review.  Crocs conflates a key distinction between complainants and respondents in the finality analysis.  Indeed, unlike affirmative determinations which are appealable by respondents, negative determinations become final upon issuance, because they are not subject to Presidential review and no Presidential action can change their finality.

Crocs missed the deadline for filing its appeal, but Crocs cannot cure its jurisdictional defect by asking the Court to deviate from decades of clear jurisdictional precedent and practice.  Accordingly, the Court lacks jurisdiction to hear this appeal and should dismiss it as untimely.

# ARGUMENT

## I. Crocs Cannot Avoid this Court's Longstanding Precedent that Negative Determinations Become Final Upon Issuance.

Under this Court's clear and consistent precedent, negative Commission determinations become final upon issuance because they are not subject to Presidential review, and thus must be appealed within 60 days of issuance. *See, e.g.*, *Allied*, 782 F.2d at 984 (negative determination of patent invalidity was final upon issuance and appeal was untimely where complainant filed it after expiration of the period of Presidential review, more than 60 days after issuance); *see also Broadcom Corp. v. ITC*, 542 F.3d 894, 896-97 (Fed. Cir. 2008) (complainant's appeal from negative (non-infringement) determination was not premature where complainant filed appeal within 60 days of that determination, before expiration of the period of Presidential review); *Excel Dryer*, Order at 3 (appeal from Commission determination not to issue a cease and desist order ("CDO") was untimely where complainant filed appeal after expiration of the period of Presidential review).

Crocs' main argument against this Court's longstanding precedent is this Court's decision in *Young Engineers*. ECF 13 at 19 (arguing that *Young Engineers* "is squarely on point, and [it] controls over any later-decided cases"). *Young Engineers*, however, did not address whether a complainant could appeal a negative determination after expiration of the Presidential review period. *See*

*Young Eng'rs, Inc. v. USITC*, 721 F.2d 1305 (Fed. Cir. 1983). Indeed, it could not have addressed that issue because it did not involve a complainant's appeal from a negative determination but a respondent's appeal from an affirmative determination (to reissue a GEO and a CDO) after the President disapproved CDOs against other respondents. *See id.* at 1309. Thus, *Young Engineers* does not support Crocs' contention that a final determination is necessarily a single determination or that a negative determination is not final upon issuance. *See also Allied*, 782 F.2d at 984 (rejecting appellant's argument that a section 337 proceeding is a "single entity").[2]

Similarly misguided are Crocs' attempts to distinguish this Court's pertinent precedent based on irrelevant considerations such as whether the Commission "elects to issue multiple separate final determinations in separate documents addressing separate intellectual property rights." ECF 13 at 3, 19-20. Indeed, the finality of a Commission determination does not turn on any of these considerations. Rather, for finality, the Court considers whether the determination has "further opportunity for review … other than by way of review in this Court."

---

[2] In fact, a final determination often includes both an affirmative determination which becomes final after Presidential review and a negative determination which becomes final upon issuance, and this Court typically consolidates any appeals therefrom as cross-appeals. *See Bio-Rad Labs., Inc. v. ITC*, 998 F.3d 1320, 1327 (Fed. Cir. 2021); *Ajinomoto Co. v. ITC*, 932 F.3d 1342, 1345-46 (Fed. Cir. 2019).

*Broadcom*, 542 F.3d at 896-97; *Allied*, 782 F.2d at 983-84 (patent invalidity determination was final upon issuance, "there being no provision for Presidential review, or for other administrative proceedings, following a determination that does not lead to an exclusion order"); *Excel Dryer*, Order at 3 (determination not to issue a CDO was final upon issuance because "the results of the Presidential review 'could not possibly effect [Excel Dryer's] right to appeal'" that decision). Further, accepting Crocs' interpretation of "finality" would lead to incongruous results, as the negative determination could either become final upon issuance or upon expiration of the period of Presidential review, depending on such irrelevant considerations as whether the Commission issues its determinations on the same or separate documents. The Court has never suggested such an analysis of finality. Crocs' interpretation is untenable and inconsistent with precedent and practice.

While admittedly nonprecedential, this Court's decision in *Excel Dryer* confirms the Commission's interpretation here. In *Excel Dryer*, the Commission issued a GEO and CDOs against certain respondents but declined to issue a CDO against another respondent. *Excel Dryer*, Order at 2. Like Crocs, appellant in *Excel Dryer* was also a complainant before the Commission and it filed its appeal from the negative determination (denying a CDO against one respondent) after the period of Presidential review ended, which was more than 60 days from the issuance of that negative determination. The Court dismissed the appeal as

untimely. *Id.* at 3-4. Crocs attempts to distinguish *Excel Dryer* on the basis that Crocs is "appeal[ing] the inadequacy of remedies issued as part of 'favorable' determinations." ECF 13 at 22. In so doing, Crocs relies on the fiction that the Commission's decision not to issue a GEO is, somehow, part and parcel with the Commission's remedy or "favorable" determination, which is subject to Presidential review. Not so. As discussed above, the denial of a GEO is not subject to Presidential review.

As to *Tessera*, it is not analogous, as Crocs contends. ECF 13 at 23. In fact, *Tessera* confirms that a final determination of no violation of section 337 becomes final upon issuance. *See Tessera, Inc. v. ITC*, 646 F.3d 1357, 1367 (Fed. Cir. 2011) (finding the appeal from a patent exhaustion determination timely where complainant filed within 60 days of the final determination). Nothing in *Tessera* supports Crocs' contention that it can wait until after expiration of the period of Presidential review to file its appeal. Crocs distinguishes *Tessera* on the basis that it did not involve Presidential review. ECF 13 at 24 n.4. That distinction is not only irrelevant because negative determinations are never subject to Presidential review, but it undermines Crocs' own arguments about *Allied* and *Broadcom*. Indeed, in both those cases, there was Presidential review of the affirmative determinations, but it did not affect the finality of the negative determinations.

Notably, Crocs cannot provide a single example where a complainant ever timely filed its appeal of a negative determination after the expiration of the 60-day period of Presidential review, including with respect to partial denials of remedy. *Cf. Excel Dryer*, Order at 3. The Commission, on the other hand, provided numerous examples demonstrating the longstanding practice of complainants filing their appeals no later than 60 days after issuance of negative determinations. ECF 11 at 11.

## II. **Crocs Misconstrues the Statutory Language, the Legislative History, and the Effect of Presidential Review.**

As discussed above, this Court's precedent makes it clear that a negative Commission determination is final upon issuance because it is not subject to Presidential review. Crocs now seeks to revisit the issue anew without regard to that precedent, arguing, essentially and without merit, that a decision to decline a GEO is, somehow, not a negative determination. Even if they were permissible, Crocs' arguments are without merit. None of the authorities cited by Crocs supports the proposition that a complainant may wait, as Crocs did, until after expiration of the period of Presidential review.

Under section 337(c), a party adversely affected by a final determination of the Commission may appeal such determination "within 60 days after the determination becomes final." 19 U.S.C. § 1337(c). What matters is not when the Commission issued each determination, but the finality of such determination. *See*

*Amarin Pharma, Inc. v. ITC*, 923 F.3d 959, 964 (Fed. Cir. 2019) (analysis of the finality of a Commission decision "focuse[s] on the operative effect" of that decision); *see also Broadcom*, 542 F.3d at 896-97; *Allied*, 782 F.2d at 983-84.

Here, the Commission's negative determinations were not subject to approval or disapproval by the President and therefore, they became final upon issuance, *i.e.*, on September 14, 2023. Crocs' right of appeal started on that day. There is also no piecemeal appeal in this case.[3] Crocs' contrary assertion is based on the flawed premise that the Commission's decision not to issue a GEO became final after the expiration of the period of Presidential review. But, as discussed above, the denial of the GEO was also a negative determination that became final upon issuance. Crocs was only required to file a single petition for review to appeal "all adverse judgments, decrees, decisions, rulings, findings, orders, instructions, and opinions," which Crocs did in its petition for review. ECF 1-2 at 2. Crocs, however, failed to do so within the prescribed statutory period.

The legislative history of section 337(c) does not help Crocs. The cited portion (reproduced below) refers to affirmative determinations which are the only ones subject to Presidential review under section 337(j) (formerly section 337(g)).

---

[3] That more than one appeal may be taken in some cases is a result of the statutory 60-day requirement and controlling precedent, including *Allied* and *Broadcom*. Such appeals are typically consolidated if they are close in time.

*See* S. Rep. No. 93-1298, 196-97 (1974) ("By final determination, as used in this section, the Committee means a Commission determination which has been referred to the President *under amended section (g)* of section 337 … .") (emphasis added).[4] The same legislative history further clarifies (in connection with the former section 337(g)) that it would require that "*affirmative determinations* of the Commission under section 337(d) or (e), as amended, be … transmitted to the President." *Id.* at 198 (emphasis added).

Nor is there any support in section 337(j) or elsewhere for Crocs' theory that the Commission's final determination is "a unitary whole" that becomes final after the period of Presidential review.[5] ECF 13 at 9. Crocs ignores the language of section 337(j) which provides that the Commission is only required to "transmit to the President a copy of [a] determination" in circumstances where "the

---

[4] Similarly, the statement in *Import Motors* quoting the legislative history refers to "a final decision of the Commission on the merits in favor of a complainant," *i.e.*, an affirmative determination. *Imp. Motors, Ltd. v. ITC*, 530 F.2d 940, 945 (C.C.P.A. 1976). Significantly, *Import Motors* also recognizes that "[a] final decision of the Commission unfavorable to a complainant … would be a directly appealable 'final determination,' such a decision not being referrable to the President under [section] 337(g)." *Id.*

[5] The Commission's reference to "final determination" does not mean that it is a single determination, as Crocs contends. ECF 13 at 13. Rather, "final determination" simply refers to the final disposition of investigations under Commission practice. *See, e.g.*, ECF 1-2, Ex. A (Comm'n Notice) (including both a determination of no violation against participating respondents and a determination to issue remedial orders against defaulting respondents).

Commission determines that there is *a violation* of this section" (as well as other circumstances not applicable here). 19 U.S.C. § 1337(j)(1)(B) (emphasis added).[6]

The President's disapproval of the remedial orders has no effect on the merits of the Commission's final determination or the finality of the Commission's decision not to issue a GEO, contrary to Crocs' suggestion. ECF 13 at 16. Rather, section 337(j) provides that the President may disapprove the Commission's affirmative determination "for policy reasons," not based on a substantive disagreement over the Commission's findings or failure to issue a GEO. *See* 19 U.S.C. § 1337(j)(2); *Young Eng'rs*, 721 F.2d at 1313 ("The President may disapprove only 'for policy reasons,' not because of the merits of an investigation."). To the extent the Commission "engage[s] in further proceedings," as Crocs suggests (ECF 13 at 16), such proceeding would result in a new determination and a new right of appeal. *See Allied Corp. v. USITC*, 850 F.2d 1573, 1580 (Fed. Cir. 1988).

---

[6] Crocs' reliance on Commission Rule 210.49 is similarly misplaced. The rule confirms that only "*affirmative*" determinations are transmitted to the President and that such determinations "become final the day after the close of the 60-day period or the day the President notifies the Commission of his approval, as the case may be." *See* 19 C.F.R. § 210.49(d) (emphasis added).

## III. The Cases Cited by Crocs Do Not Support Its Contention that Final Determinations Are Single Determinations that Become Final After Presidential Review.

The cases cited by Crocs are inapposite because they relate to appeals filed by respondents from affirmative Commission determinations of a violation of section 337, not a complainant's appeal from a negative determination. *See LG Elecs. Mobilecomm U.S.A., Inc. v. ITC*, 243 F. App'x 598, 599 (Fed. Cir. 2007); *Young Eng'rs*, 721 F.2d at 1309; *SSIH Equip. S.A. v. ITC*, 718 F.2d 365, 370 (Fed. Cir. 1983). Affirmative determinations are subject to Presidential review and thus become final upon expiration of the review period. Accordingly, those cases are not inconsistent with *Allied* or its holding that negative determinations become final upon issuance.

Crocs also cites cases relating to negative determinations, but for propositions that are not in dispute. *See John Mezzalingua Assocs., Inc. v. ITC*, 660 F.3d 1322 (Fed. Cir. 2011); *Fuji Photo Film Co. v. ITC*, 386 F.3d 1095 (Fed. Cir. 2004).[7] The Commission does not dispute Crocs' right to appeal the Commission's negative determinations, merely the timeliness of that appeal.

---

[7] Significantly, in both *John Mezzalingua* and *Fuji*, complainants filed their appeal within 60 days of the Commission's determination. In *John Mezzalingua*, the Commission issued its notice on July 12, 2010, and the appeal was filed on September 9, 2010. In *Fuji*, the "pertinent" determination issued in June 2003 and the related appeal was filed on July 14, 2003.

# CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction to hear the present appeal and should dismiss it as untimely.

Respectfully submitted,

*/s/ Houda Morad*
Dominic Bianchi
    General Counsel
Wayne W. Herrington
    Assistant General Counsel
Houda Morad
    Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436
Tel: (202) 708-4716
Fax: (202) 205-3111
houda.morad@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Dated: March 25, 2024

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED. R. APP. P. 27(d)(2)(A), 32(g)**

Pursuant to Fed. R. App. P. 27(d)(2)(A) and 32(g), I hereby certify that the attached reply complies with the type-volume limitation and typeface requirements. The reply has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in Times New Roman 14-point font, and the reply contains 2,593 words according to the word-count function of the word-processing system.

*/s/ Houda Morad*

Houda Morad
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Tel: (202) 708-4716
Fax: (202) 205-3111
houda.morad@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Dated: March 25, 2024